UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

MICHAEL FREDRICKS,

                Plaintiff,                          12 Civ. 3734

    -against-                                    OPINION

THE CITY OF NEW YORK; PRISON HEALTH
SERVICES; PRISON HEALTH SERVICES MEDICAL
SERVICES P.C.; DR. JEAN RICHARD; DR. ASLAM
KADRI; SAMUEL OKOROZO; DR.
KRISNAPATIBANDLA; JAMES RICH; PETER
WACHTEL; New York City Department of
Correction ("NYCDOC") Captain ("CPT.")
RICHARD ROE, and Corrections Officer
("C.O.") JOHN DOE 1 through 25
(the names Richard Roe and John Doe being
fictitious, as the true names are not
presently known), in their individual
and official capacities,

                Defendants.

------------------------------------------------X



A P P E A R A N C E S:

        Attorney for Plaintiff

        RANKIN & TAYLOR, PLLC
        350 Broadway, Suite 701
        New York, NY 10013
        By: Robert M. Quackenbush, Esq.

        Attorney for Defendants

        MICHAEL A. CARDOZO
        Corporation Counsel of the City of New York
        100 Church Street
        New York, NY 10007
        By: Eric Porter, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY
DOC #: _____
DATE FILED: 3-6-13

**Sweet, D.J.**

Defendants City of New York (the "City"), Prison
Health Services and Prison Health Services Medical Services P.C.
(together "PHS", and collectively with the City, "Defendants")[1],
have moved pursuant to Fed. R. Civ. P. 12(b)(6) ("12(b)(6)") to
dismiss the First Amended Complaint ("FAC") of plaintiff Michael
Fredricks ("Fredricks" or "Plaintiff") alleging constitutional

---

[1] In addition to defendants City and PHS, the FAC names the
following individual defendants: Dr. Jean Richard, Dr. Aslam
Kadri, Samuel Okorozo, Dr. Krishnapatibandla, James Rich, Peter
Wachtel (collectively, the "Individual Medical Defendants");
Captain Richard Roe of the New York City Department of
Corrections (a fictitious name); and Corrections Officers John
Does 1-25.  According to the docket, none of these defendants
has been served with a summons and complaint.  However, pursuant
to an order dated November 28, 2012, the deadline for service
upon the Individual Medical Defendants was extended until 45
days following the issuance of a ruling on the instant motion.
See Dkt. No. 26.  Thus, the time for service of these defendants
has not run.  No such extension was granted, however, with
respect to defendants Captain Richard Roe and Corrections
Officers John Does 1-25, and the time to service these
defendants pursuant to Fed. R. Civ. P. 4(m) ("Rule 4(m)") has
long since expired.  The failure to serve within the 120 days
allotted by Rule 4(m) ordinarily warrants dismissal of the
Plaintiff's claims as to the unserved defendants, absent good
cause for the service failure.  See Rule 4(m).  Here, such good
cause exists, because Plaintiff has alleged that he is currently
unaware of the identities of defendants Captain Richard Roe and
C.O. Does 1-25.  FAC ¶ 22.  Accordingly, dismissal of the claims
against these defendants pursuant to Rule 4(m) is not warranted.

violations pursuant to 42 U.S.C. § 1983 ("§ 1983"), and violations of Title II of the Americans with Disabilities Act of 1990, codified at 42 U.S.C. § 12131, et seq. (the "ADA"), Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 701, et seq. (the "Rehabilitation Act"), and the laws of the State of New York.

Upon the conclusions set forth below, the motion to dismiss is granted in part and denied in part, with leave to replead within 20 days.

**Prior Proceedings**

The Plaintiff filed his initial complaint on May 10, 2012, and the Defendants moved to dismiss that complaint on July 20, 2012. The Plaintiff thereafter filed the FAC on July 30, 2012, and the Defendants submitted the instant motion to dismiss on August 30, 2012. The motion was marked fully submitted on October 5, 2012, and was argued on October 17, 2012.

**The FAC**

The allegations in the FAC are presumed to be true for the purpose of ruling on the motion to dismiss, see USAA Cas. Ins.

Co. v. Permanent Mission of Republic of Namibia, 681 F.3d 103, 105 n. 4 (2d Cir. 2012), and are described below.

Since birth, Fredricks has been afflicted with proximal femoral focal deficiency, a degenerative bone deformity that affects his hips, lower right leg and foot.  FAC ¶ 27. Proximal femoral focal deficiency is a rare, non-hereditary birth defect that affects the pelvis and proximal femur, typically resulting in a deformed hip and shortened leg, commonly associated with the absence or shortening of a leg bone, absence of a kneecap, instability of the joint between the femur and kneecap, and foot deformities.  Id. ¶¶ 27-28. Fredricks has undergone no fewer than 52 corrective surgeries throughout the course of his lifetime, including bone lengthening of his right leg bone and bone shortening of his left leg.  Id. ¶ 29.  Fredricks has difficulty walking as a result of his condition, and has used wheelchairs, walkers, crutches, multiple leg braces, and prescription orthotic shoes to aid in his mobility.  Id.

In the summer of 2010, after an extensive period of rehabilitative physical therapy, Fredricks began using a "bulky jones" immobilizer on his right leg (which consists of metal

rods and padding behind the knee) as well as an atrophy brace
made of fiberglass that fits around his right ankle and calf.
Id. ¶ 30.   The utilization of these devices enabled Fredricks
to walk with the use of a cane.   Id.

On August 3, 2010, Fredricks was arrested and remanded
to Rikers Island pending trial.[2]  Id. ¶ 31.  He was initially
permitted to use his two leg braces, cane and prescription
orthotic shoes.  Id. ¶ 32.  However, in January 2011, defendants
C.O. John Does 1-25 ("the C.O. Defendants"), acting at the
direction of defendant Captain Roe ("Roe", and collectively with
the C.O. Defendants, the "NYCDOC Individual Defendants"),
searched the Fredricks' dormitory and seized all of his
assistive walking devices.  Id.  The C.O. Defendants and Roe had
knowledge of Fredrick's medical condition at the time that his
assistive walking devices were seized, having been made aware
either by Fredricks himself, by word-of-mouth from other prison
personnel, or through their common-sense observations of
Fredricks' attempts to ambulate through the prison.  Id. ¶ 33.
However, notwithstanding their knowledge of Fredricks'

---

[2] The events giving rise to Fredricks' claims in the instant
action occurred from January 2011 to February 25, 2011.  FAC ¶¶
32, 66.  Since Fredricks was only convicted on March 30, 2011,
he had the status of a pretrial detainee during the period of
incarceration relevant to this case.  Id. ¶ 67.

condition, the NYCDOC Individual Defendants retained possession of Fredricks' assistive walking devices.  Id. ¶ 35.  Following the seizure of his assistive walking devices, Fredricks was not permitted to use his leg braces or his orthotic shoes at any time, and was only permitted to use his cane when he needed to leave the housing unit.  Id. ¶ 36.

The NYCDOC Individual Defendants subsequently replaced Fredricks' size 8.5 prescription orthotic shoes with size 14 sneakers which lacked the orthotic lifts required by Plaintiff to ambulate safely.  Id. ¶¶ 37-38.  Fredricks' feet would repeatedly slip out of the size 14 sneakers as he walked, which made him hesitant to walk at any time for fear that he would fall and injure himself.  Id. ¶¶ 40-41.  Fredricks informed both the NYCDOC Individual Defendants and PHS about the particular risks he faced due to the deprivation of his orthotic shoes, leg braces, and cane.  Id. ¶ 41.  The NYCDOC Individual Defendants and PHS told Fredricks to direct his his complaints and grievances to defendant Dr. Jean Richard.  Id. ¶ 42. Based on these directions, Fredricks believed that Dr. Richard was empowered to remedy his deprivations, so Fredricks submitted no fewer than three written complaints to Dr. Richard informing Dr. Richard of his medical condition and the risks posed by completely depriving him of his leg braces and prescription

orthotic shoes, and allowing him to access his cane only when he left his housing unit.  Id. ¶¶ 43-44.  The complaints to Dr. Richard were submitted prior to February 12, 2011. Id. ¶ 44.

Fredricks also submitted written complaints to Dr. Richard about the chronically wet floors inside his dormitory, expressing his fear that the presence of wet floors would increase his risk of falling and injuring himself.  Id. ¶ 45. Due to Fredricks' numerous written complaints, Dr. Richard was aware that Fredricks needed constant access to his braces, orthotic shoes and cane, and that such access was medically necessary given Fredricks' condition.  Id. ¶ 47.  However, despite Fredricks' complaints no action was taken to return his assistive walking devices.  Id. ¶ 48.

On the morning of February 12, 2011, Fredricks attempted to walk from his cell to the dormitory's sitting room, where he planned to await breakfast.  Id. ¶ 50.  Along the way, Fredricks slipped in a "pool of water" and fell to the floor, causing a catastrophic fracture of his right distal femur (the "February 12 Injury").  Id. ¶ 51.  After the fall, Fredricks was not provided with a wheelchair, but rather was forced to ambulate to the prison's urgent care unit using only crutches. Id. ¶ 53.  X-rays were taken of Fredricks' leg, and after

examining the x-rays, defendant Dr. Aslam Kadri concluded the Fredricks' leg was not fractured.  Id. ¶ 54.  Dr. Kadri prescribed "Tylenol/Codeine 3" for pain relief, and sent Fredricks back to his dormitory on crutches.  Id.

Upon Fredricks' return to his dormitory, one of the C.O. Defendants seized his crutches, telling Fredricks that crutches were not allowed inside the housing unit.  Id. ¶ 56. As a result, Fredricks was forced to use a "flimsy plastic chair" in order to ambulate.  Id. ¶ 57.

Following the February 12 Injury, Fredricks was unable to ambulate without risking further physical harm due to the NYCDOC Individual Defendants' repeated refusals to return any of Fredricks' mobility aids to him.  Id. ¶¶ 56-58.  The refusal to return Fredricks' assistive walking devices therefore resulted in a *de facto* restriction on Fredricks' recreation time, and particularly his outdoor recreation time.  Id.

On February 15, 2011, an outside physician from Bellevue Hospital diagnosed Fredricks as having sustained a distal femur fracture as a result of the February 12 Injury. Id. ¶¶ 59-60.  Upon return to Rikers Island, however, Dr.

Richard continued treat Fredricks' injury as if it were not an
acute fracture.  Id. ¶ 61.


     On or about February 24, 2011, Fredricks was
transferred to North Infirmary Command within Rikers Island, and
at that point was provided with a new leg brace.  Id. ¶ 65.
Fredricks was also provided with properly sized sneakers;
however, the sneakers did not contain an orthotic lifts, which
made it impossible for Fredricks to walk safely using the
sneakers due to the different lengths of his legs.  Id.  On
February 25, 2011, Fredricks was given use of a wheelchair
following a written request by a member of the PHS nursing
staff.  Id. ¶ 66.


**Fredricks' § 1983 Claims are Dismissed**


     Section 1983 Claims against individual municipal
employees in their official capacities are tantamount to a §
1983 claim against the municipality itself; accordingly, in
order to establish a basis for liability against municipal
employees, a plaintiff must allege the existence of a municipal
policy or custom that resulted in the underlying violations
allegedly committed by the municipal employee defendants.
Dwares v. New York, 985 F.2d 94, 100-01 (2d Cir. 1993)

(overruled on other grounds by Leatherman v. Tarrant County
Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69
(1993)).

Fredricks asserts § 1983 claims against the NYCDOCC
Individual Defendants and the Individual Medical Defendants in
their capacities as municipal employees, see FAC ¶¶ 69-82, but
fails to make any allegations regarding a custom or policy that
resulted in the alleged violations of Fredricks' constitutional
rights.  Thus, even assuming, *arguendo*, that Fredricks has
alleged viable constitutional claims, his § 1983 claims fail
because he has not established a basis for holding any of the
municipal defendants liable pursuant to § 1983.

**Fredricks States ADA and Rehabilitation Act Claims**
**Against The City**

Fredricks asserts claims against the City for
violation of Title II of the ADA and Section 504 of the
Rehabilitation Act.[3]  Fredricks contends that the City violated

---

[3] The ADA and the Rehabilitation Act "impose identical
requirements," and therefore courts generally consider claims
under these statutes "in tandem." Rodriguez v. City of New
York, 197 F.3d 611, 618 (2d Cir. 1999).  Accordingly, while the
analysis below references only the ADA, it applies with equal
force to Fredricks' claims under the Rehabilitation Act.

the ADA and the Rehabilitation Act in that it: (i) denied
services to Fredricks by subjecting him to medical care that
exacerbated his disability and negatively impacted his ability
to heal; and (ii) failed to accommodate to Fredricks' disability
by seizing his assistive walking devices and refusing to return
them or provide suitable replacements, thereby denying
Fredericks the ability to participate in the outdoor recreation
time provided to inmates.  FAC ¶¶ 83-101.


        In order to state a claim under Title II of the ADA,
a plaintiff must allege "that (1) he or she is a qualified
individual with a disability; (2) that the defendants are
subject to the ADA; and (3) that plaintiff was denied the
opportunity to participate in or benefit from defendants'
services, programs, or activities or was otherwise discriminated
against by defendants, by reason of plaintiff's disabilities."
Shomo v. City of New York, 579 F.3d 176, 185 (2d Cir. 2009)
(quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir.
2003)) (alterations omitted).  With respect to the latter
pleading element, the Second Circuit has explained that a
plaintiff must allege that his alleged mistreatment "was
motivated by either discriminatory animus or ill will due to
disability."  Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn,
280 F.3d 98, 112 (2d Cir. 1998).

                              10

With respect to Fredricks' allegation that he was discriminated against by virtue of the "deplorable" medical care that he received, FAC ¶ 87, Fredricks fails to state an ADA claim because he does not allege that the inadequacy of the treatment resulted from the fact that he is disabled.  Indeed, "[c]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." Elbert v. New York State Dept. of Corr. Svcs., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (collecting cases). Fredericks' allegation that the City violated the ADA by "repeatedly subjecting Mr. Fredricks to deplorable medical care that exacerbated his disability and negatively impacted his ability to heal," FAC ¶ 87, is insufficient to support an ADA claim because "[n]o discrimination is alleged; [plaintiff] was not treated worse because he was disabled. [. . .] He is complaining about incompetent treatment of his [medical condition].  The ADA does not create a remedy for malpractice." Elbert, 751 F. Supp. 2d at 596 (quoting Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).

Fredricks does, however, adequately allege discriminatory animus with respect to his allegations regarding

11

defendants' failure to give him access to his assistive walking
devices or some adequate replacement thereof, and the consequent
restriction upon his outdoor recreation time.  According to
Fredricks, the refusal to accommodate his disability stemmed
from a desire to avoid the "administrative inconvenience" that
would have been involved in making the necessary arrangements to
enable a disabled inmate such as Fredricks to participate in
outdoor recreation time to the same extent as able-bodied
inmates.  See FAC ¶ 49, 88-92, 98-100.  Fredricks thus satisfies
the ADA's pleading requirement that a plaintiff allege that the
denial of service or opportunity was "by reason of" his
disability.  Shomo, 579 F.3d at 185.

     The City contends that Fredricks' ADA and
Rehabilitation Act claims premised upon the removal of his
assistive walking devices fail because Fredricks did not
adequately allege that the mistreatment resulted in a denial of
benefits, as is required in order to state a claim under the
ADA.  See 42 U.S.C. § 12132.  However, Fredricks did allege that
as a result of the discriminatory treatment, he had
"unreasonable de facto restrictions placed on his recreation
time, particularly his outdoor recreation time."  FAC ¶ 58.
Reading this allegation in a light most favorable to Fredricks
(as is required on a motion to dismiss pursuant to Rule

12(b)(6), <u>see</u> <u>Grund v. Del. Charter Guarantee & Trust Co.</u>, 788
F. Supp. 2d 226, 245 (S.D.N.Y. 2011)), Fredricks has adequately
alleged an exclusion from outdoor recreation time sufficient to
state a claim under the ADA.[4]


     The City also contends that Fredricks' ADA claim fails
because he does not allege a *complete* denial of the benefit of
outdoor recreation time.  While it is true that Fredricks does
not allege that he was wholly excluded from participating in
outdoor recreation time, he does contend that, due to the
failure to accommodate his disability, any attempt on his part
to avail himself of outdoor recreation time would have been both
painful and dangerous.  FAC ¶¶ 40-41.  This allegation is
sufficient to plead a denial of benefits under the ADA.  <u>See</u>
<u>Allah v. Goord</u>, 405 F. Supp. 2d 265, 280-81 (S.D.N.Y. 2005)
("Although plaintiff is not wholly precluded from participating
in this service, if he is at risk of incurring serious injuries
each time he attempts to take advantage of [the service at
issue], surely he is being denied the *benefits* of this
service.").

---

[4] Outdoor recreation time for inmates is one of the "services,
programs or activities" covered by the ADA.  <u>See</u> <u>Beckford v.</u>
<u>Irvin</u>, 49 F. Supp. 2d 170, 184 (W.D.N.Y. 1999).

Fredericks has fulfilled the other ADA pleading requirements by alleging that Fredericks is "disabled" under the ADA and that the City is subject to the ADA, and the City does not contest the sufficiency of these pleading elements. Accordingly, Fredericks had adequately pled an ADA claim against the City.

**Fredericks' ADA and Rehabilitation Act Claims Against PHS are Dismissed**

Fredericks also asserts ADA and Rehabilitation Act claims against defendant PHS.  However, as explained below, neither the ADA nor the Rehabilitation Act apply to PHS, and therefore those claims are dismissed.

A claim brought under Title II of the ADA—such as that asserted by Fredricks—may lie only against a "public entity." 42 U.S.C. § 12132.  The Second Circuit has held that the statute's use of the term "public entity" is meant to exclude "a private [entity] performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction . . . ."  Green v. City of New York, 465 F.3d 65, 79 (2d Cir. 2006).  Fredricks alleges in the FAC that both entities comprising defendant PHS are "corporation[s] which, upon information and belief,

14

contract[] with defendant CITY to provide health services to
detainees in NYCDOC facilities . . . ." FAC ¶¶ 18-19.
Accordingly, PHS is not a "public entity" within the meaning of
the ADA, and therefore cannot be held liable under that statute.
See Green, 465 F.3d at 79.

A Rehabilitation Act claim against an entity other
than the United States Postal Service or an agency of the
Executive Branch of the Federal Government is viable only if
that entity is a recipient of "Federal financial assistance."
29 U.S.C. § 794. An entity is considered to be in receipt of
"Federal financial assistance" only if it is the beneficiary of
transactions such as the "transfer of government funds by way of
a subsidy, or a sale of government assets at reduced
consideration." Cook v. Budget Rent-A-Car Corp., 502 F. Supp.
494, 496 (S.D.N.Y. 1980). This excludes recipients of federal
funds pursuant to "'procurement contracts,' that is contracts in
which goods or services are sold or purchased by the government
for its own account at fair market value." Id. Even if,
arguendo, PHS is considered to be an indirect recipient of
federal funds by virtue of the fact that it receives money from
the City, which in turn receives money from the Federal
Government, the clear implication of Fredricks' allegations
regarding PHS is that such money is received pursuant to a

15

procurement contract between PHS and the City.  See FAC ¶¶ 18-19.  Thus, to the extent that PHS receives federal money by way of its contract with the City, such money "does not render the company a program or activity receiving federal financial assistance with the meaning of the [Rehabilitation] Act."  Tolliver v. Xerox Corp., 918 F.2d 1052, 1060 (2d Cir. 1990).  Accordingly, PHS cannot be held liable under the Rehabilitation Act.[5]

**Exercising Supplemental Jurisdiction Over Fredricks' State Law Claims is Appropriate**


    Fredricks asserts state law claims for *respondeat superior* liability, medical malpractice, and negligence.  FAC ¶¶ 102-111.  The Defendants' only argument in favor of dismissing these claims is that, in the event that Fredricks' federal claims are all dismissed, dismissal of the state claims would be warranted.  Because Fredricks' federal ADA and Rehabilitation

---

[5] Although neither the argument regarding the ADA's inapplicability to PHS nor the argument regarding the Rehabilitation Act's inapplicability to PHS were raised in the briefing on the instant motion, these arguments may nonetheless form the basis for dismissal of the claims against PHS because "failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*."  Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000).

Act claims against the City survive the instant motion to
dismiss, it is appropriate to exercise supplemental jurisdiction
over Fredricks' state law claims pursuant to 28 U.S.C. § 1367,
"to avoid the potential for duplicative litigation over the same
conduct." Int'l Healthcare Exchange, Inc. v. Global Healthcare
Exchange, LLC, 470 F. Supp. 2d 345, 357-58 (S.D.N.Y. 2007).

**Conclusion**

    For the foregoing reasons, the motion to dismiss is
granted in part and denied in part, with leave granted to
replead within 20 days.

**New York, NY**
**March**  ⁄⁄  **, 2013**

                                    ROBERT W. SWEET
                                       U.S.D.J.

17